**Nos. 18-2397, -2398**

# United States Court of Appeals for the Sixth Circuit

---

EVOQUA WATER TECHNOLOGIES LLC,

Appellant, Cross-Appellee,

v.

M.W. WATERMARK, LLC, *et. al*

Appellants, Cross-Appellees.

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids
in Civ. A. No. 1:16-cv-14, Honorable Robert J. Jonker

---

## THIRD BRIEF


Craig R. Smith
*Counsel of Record*
Eric P. Carnevale
LANDO & ANASTASI, LLP
1 Main Street
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070
***Attorneys for Plaintiff-Appellant***
***Evoqua Water Technologies LLC***


Date: May 1, 2019

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, Counsel for the Plaintiff-Appellant, Evoqua Water Technologies LLC, certifies the following:

1. The full name of every party represented by me is Evoqua Water Technologies LLC.

2. Evoqua Water Technologies LLC is a wholly owned subsidiary of EWT Holding III Corp., which is a wholly owned subsidiary of EWT Holding II Corp., which is a wholly owned subsidiary of Evoqua Water Technologies Corp., a publicly traded company.

3. No other publicly owned corporations, not a party to the appeal, are believed to have a financial interest in the outcome of this appeal.

Dated: May 1, 2019

Respectfully submitted,

By: */s/ Craig R. Smith*


Craig R. Smith
LANDO & ANASTASI, LLP
Riverfront Office Park
One Main Street – 11th Floor
Cambridge, MA 02142
Tel: (617) 395-7000
Fax: (617) 395-7070
csmith@lalaw.com


***Attorneys for Plaintiff-Appellant***
***Evoqua Water Technologies LLC***

## TABLE OF CONTENTS


Corporate Disclosure Statement ..... i

Table of Contents ..... ii

Table of Authorities ..... v

Statement Regarding Oral Argument for Cross-Appeal ..... xi

Restatement of the Case ..... 1

I. Evoqua Incorporates Its Previous Statement of the Case ..... 1

II. Watermark Was Founded Based on Trademark Infringement ..... 2

III. Watermark Continued A Pattern of Trademark Infringement ..... 4

IV. Watermark's Theft and Copying of Evoqua's Documents for Its Own Use ..... 6

V. Watermark Advertised That It "Feature[d] OEM Parts" for Evoqua Branded Equipment, Which Watermark Admits Had To Be Corrected ..... 11

Summary of the Argument ..... 14

I. Evoqua Has Standing to Enforce the Permanent Injunction and the District Court's Decision Should Be Reversed ..... 14

II. Evoqua Owns the Copyrights in Suit and The District Court's Determination Should Be Reversed ..... 17

III. The District Court's Refusal to Award Attorneys' Fees Was Within Its Sound Discretion ..... 18

IV. The District Court Acted Within Its Discretion in Refusing to Award Fees Under the Lanham Act ..... 20

Arguments in Reply ..... 22

I. The District Court's Determination that Evoqua Lacked Standing to Enforce the Permanent Injunction Should Be Reversed ..... 22

A. Watermark Argues for an Incorrect Standard of Review ....................22

B. Evoqua Did Not Waive Any Argument It Raises on Appeal.....................................................................................24

C. Evoqua Has the Right to Enforce the Permanent Injunction Entered In the 2003 Litigation as the Real Party in Interest ..........................................................................26

D. If Article III Standing Is Construed as A Contract Right, Evoqua Has the Right to Enforce the Permanent Injunction........................................................................................32

II. The District Court's Determination that Evoqua Did Not Own the Copyrights in Suit Should Be Reversed ..................................................34

Argument In Response to Cross-Appeal ...................................................................39

I. The District Court's Refusal to Award Attorneys' Fees Was Within Its Sound Discretion ........................................................................39

A. The Award of Attorneys' Fees Under the Copyright Act Is Reviewed for an Abuse of Discretion ............................................39

B. Evoqua's Copyright Claim Was an Objectively Reasonable, Non-Frivolous Attempt to Stop Watermark from Copying and Modifying Evoqua's Manuals ..............................40

C. Watermark Has Failed to Overcome the District Court's Finding that Evoqua Did Not Multiply Proceedings ...........................46

D. Watermark Has Failed to Overcome the District Court's Finding that Evoqua Had A Good Faith Motivation for Bringing Suit ...........................................................................................48

E. Declining to Award Fees Is Consistent with the Goals of the Copyright Act ...........................................................................50

II. The District Court Acted Within Its Discretion in Refusing to Award Fees Under the Lanham Act ...............................................................52

A. A Decision Not to Award Attorneys' Fees Under the Lanham Act Is Reviewed for an Abuse of Discretion .........................52

B. The District Court's Decision Not to Award Fees Under the Lanham Act Was Within the Court's Sound Discretion ....................................................................................52

Conclusion ....................................................................................................60

## TABLE OF AUTHORITIES

**Cases**


*Advisers, Inc. v. Wiesen–Hart, Inc.*,
238 F.2d 706 (6th Cir. 1956) ....................45

*Aiken v. City of Memphis*,
37 F.3d 1155 (6th Cir. 1994) ....................28

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*,
185 F.3d 606 (6th Cir. 1999) ....................53

*Amernational Indus., Inc. v. Action–Tungsram, Inc.*,
925 F.2d 970 (6th Cir. 1991) ....................40

*Arther Rutenberg Homes, Inc. v. Drew Homes, Inc.*,
29 F.3d 1529 (11th Cir. 1994) ....................45

*Bamerilease Capital Corp. v. Nearburg*,
958 F.2d 150 (6th Cir. 1992) ....................30

*Berk v. Gordon Johnson Co.*,
232 F. Supp. 682 (E.D. Mich. 1964) ....................33

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)....................31

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
376 F.3d 615 (6th Cir. 2004) ....................41

*Cakebread v. Berkeley Millwork & Furniture Co.*,
218 F. Supp. 3d 1040 (N.D. Cal. 2016)....................48

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*,
284 F.3d 302 (1st Cir. 2002)....................53

*Clark v. Comm'r of Soc. Sec.*,
849 F.3d 647(6th Cir. 2016) ....................25

*Coach, Inc. v. Goodfellow*,
717 F.3d 498 (6th Cir. 2013) ....................52

*Cont'l Warranty, Inc. v. Warner*,
108 F. Supp. 3d 256 (D. Del. 2015)............................................................36, 37

*Corbin v. Blankenburg*,
39 F.3d 650 (6th Cir. 1994) ..........................................................................29

*E. Brooks Books, Inc. v. City of Memphis*,
633 F.3d 459 (6th Cir. 2011) ........................................................................23

*E.l. du Pont de Nemours and Co. v. Shell Oil Co.*,
498 A.2d 1108 (Del. 1985) ...........................................................................36

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)...........................................................................19, 20, 39, 48

*Gilleland v. Schanhals*,
55 Fed. App'x 257 (6th Cir. 2003) ...............................................................34

*Gladstone Realtors v. Village of Bellwood*,
441 U.S. 91 (1979)..........................................................................................29

*Huguley v. Gen. Motors Corp.*,
999 F.2d 142 (6th Cir. 1993) ........................................................................23

*Hutchinson v. Honeymoon Corp.*,
No. 5:16CV00018, 2017 WL 6502529 (N.D. Ohio Dec. 19, 2017) ...........16, 32

*ITOFCA, Inc. v. MegaTrans Logistics, Inc.*,
322 F.3d 928 (7th Cir. 2003) ........................................................................17

*Jones v. Blige*,
558 F.3d 485 (6th Cir. 2009) ...............................................................19, 40, 42

*Kirtsaeng v. John Wiley & Sons, Inc.*,
136 S. Ct. 1979, 195 L. Ed. 2d 368 (2016)......................................19, 40, 41, 51

*Leman v. Krentler-Arnold Hinge Last Co.*,
284 U.S. 448 (1932).........................................................................................30

*LidoChem, Inc. v. Stoller Enterprises, Inc.*,
No. 1:09-CV-204, 2016 WL 9281944 (W.D. Mich. Jan. 5, 2016)..............21, 52

*Lofton v. Verizon Wireless (VAW) LLC*,
308 F.R.D. 276 (N.D. Cal. 2015)....................................................................48

*Lucero v. Trosch*,
121 F.3d 591 (11th Cir. 1997) ......................................................................30

*Matthew Bender & Co., Inc. v. West Pub. Co.*,
240 F.3d 116 (2d Cir. 2001) ..........................................................................51

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*,
603 F.3d 943 (Fed. Cir. 2010) ...................................................................21, 54

*Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.*,
757 F.2d 1256 (Fed. Cir. 1985) ....................................................................30

*Montgomery v. Kraft Foods Glob., Inc.*,
No. 1:12-CV-00149, 2012 WL 6084167 (W.D. Mich. Dec. 6, 2012) ..........................................................................................................28

*N.L.R.B. v. Cincinnati Bronze, Inc.*,
829 F.2d 585 (6th Cir. 1987) .........................................................................29

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
105 F.3d 841 (2d Cir. 1997) ..........................................................................53

*Nellcor Puritan Bennett LLC v. Cas Med. Sys., Inc.*,
11 F. Supp. 3d 861 (E.D. Mich. 2014) ...........................................................55

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014)........................................................................................52

*Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*,
566 F.2d 8 (7th Cir. 1977) .............................................................................30

*Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*,
573 F. App'x 547 (6th Cir. 2014) ..................................................................52

*Prudential Sec., Inc. v. Yingling*,
226 F.3d 668 (6th Cir. 2000) ...............................................................24, 25, 26

*Radio Television Espanola S.A. v. New World Entm't, Ltd.*,
183 F.3d 922 (9th Cir. 1999) .........................................................................34

*Railway Employees v. Wright*,
364 U.S. 642 (1961) ........................................................................27

*Rasheed v. Chrysler Corp.*,
445 Mich. 109 (1994) ........................................................................32, 33

*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154 (2010) ........................................................................44

*Riddle v. Egensperger*,
266 F.3d 542 (6th Cir. 2001) ........................................................................46

*Rodriguez-Miranda v. Benin*,
829 F.3d 29 (1st Cir. 2016) ........................................................................30

*Romstadt v. Allstate Ins. Co.*,
59 F.3d 608 (6th Cir. 1995) ........................................................................40

*In re Ruben*,
825 F.2d 977 (6th Cir. 1987) ........................................................................46

*Rufo v. Inmates of Suffolk Cty. Jail*,
502 U.S. 367 (1992) ........................................................................27

*Salazar v. Buono*,
559 U.S. 700 (2010) ........................................................................29

*Schreiber v. State Farm Ins. Co.*,
494 F. Supp. 2d 758 (S.D. Ohio 2007) ........................................................................16, 32

*SCO Group, Inc. v. Novell, Inc.*,
578 F.3d 1201 (10th Cir. 2009) ........................................................................17

*Shugrue v. Cont'l Airlines, Inc.*,
977 F. Supp. 280 (S.D.N.Y. 1997) ........................................................................17, 35

*Shy v. Navistar Int'l Corp.*,
701 F.3d 523 (6th Cir. 2012) ........................................................................14, 22, 23

*Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*,
641 F.3d 197 (6th Cir. 2011) ........................................................................14, 22, 24

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)....................................................................29

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
554 U.S. 269 (2008)....................................................................29

*Taylor v. Thomas*,
624 F. App'x 322 (6th Cir. 2015)....................................................................20, 52

*Thoroughbred Software Int'l, Inc. v. Dice Corp.*,
529 F. Supp. 2d 800 (E.D. Mich. 2007)....................................................................39

*Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc.*,
55 F.Supp.2d 1113 (D. Nev. 1999)....................................................................45

*U.S. Filter/JWI, Inc. v. J-Parts, L.L.C.*,
733 F. App'x 804 (6th Cir. 2018)....................................................................24

*United States v. Armour & Co.*,
402 U.S. 673 (1971)....................................................................31

*United States v. State of Mich.*,
62 F.3d 1418 (6th Cir. 1995)....................................................................27

*United States v. State of Mich.*,
940 F.2d 143 (6th Cir. 1991)....................................................................15

*Vance v. Latimer*,
648 F. Supp. 2d 914 (E.D. Mich. 2009)....................................................................34

*Vanguards of Cleveland v. City of Cleveland*,
23 F.3d 1013 (6th Cir. 1994)....................................................................27

*Virgo v. Riviera Beach Assocs., Ltd.*,
30 F.3d 1350 (11th Cir. 1994)....................................................................30

*Vogel v. City of Cincinnati*,
959 F.2d 594 (6th Cir. 1992)....................................................................16, 32

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983)....................................................................27

**Statutes**

15 U.S.C. § 1057 ....................6

15 U.S.C. § 1117(a) ....................53

17 U.S.C. § 102 ....................37

17 U.S.C. § 106 ....................18, 37

17 U.S.C. § 505 ....................39

28 U.S.C. § 1292 ....................26

**Other Authorities**

*Wright & Miller*, 16 Fed. Prac. & Proc. § 3921 (2d ed. 1996) ....................24

**STATEMENT REGARDING ORAL ARGUMENT FOR CROSS-APPEAL**

Watermark does not request oral argument on any issues raised in its cross-appeal. *Watermark's Br.* at x. Evoqua agrees that the issues raised in Watermark's cross-appeal relate to discretionary decisions of the district court that are reviewed by this court for an abuse of discretion. These are straightforward issues that may be decided by this Court without the need for oral argument.

Watermark agrees that the issues raised in Evoqua's appeal would benefit from oral argument, although Evoqua strongly disputes Watermark's characterizations. *Id.* Evoqua reiterates its belief that this case would benefit from oral argument regarding Evoqua's standing to enforce the Permanent Injunction, and whether the Carve-Out Agreement by and between Siemens Industries, Inc. and Siemens Water Technologies (now Evoqua) was effective to transfer copyrights, for the reasons set forth in Evoqua's First Brief. *Evoqua's 1st Br.* at viii-ix.

## RESTATEMENT OF THE CASE

"Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence." *John Adams*. Watermark may wish the facts of this case were different, but ignoring them does not make them go away. Watermark was founded by infringing on Evoqua's trademarks and stealing Evoqua's confidential, proprietary and trade secret materials. The district court issued a permanent injunction to stop Watermark's violations. Despite the permanent injunction, Watermark was caught again infringing the same trademarks and using Evoqua's confidential, proprietary and trade secret information.

A jury trial held that Watermark infringed Evoqua's trademark rights, including the same trademark that Watermark was permanently enjoined from ever using. The jury's verdict of trademark infringement has not been appealed.

This appeal focuses on Watermark's contempt of the permanent injunction and acts of copyright infringement. The district erred as a matter of law in finding the permanent injunction unenforceable by Evoqua and in finding the Evoqua does not own its copyrights.

### I. EVOQUA INCORPORATES ITS PREVIOUS STATEMENT OF THE CASE

Evoqua Water Technologies LLC ("Evoqua") relies upon, but does not repeat, the Statement of the Case submitted previously in this appeal. *Evoqua's 1st*

*Br.* at 3-20. Evoqua provides this restatement of the case to address facts relevant to the Cross-Appeal of Defendant-Appellee Watermark, LLC ("Watermark").

## II. WATERMARK WAS FOUNDED BASED ON TRADEMARK INFRINGEMENT

Watermark was founded by Michael Gethin while he was still employed as a salesperson for Evoqua's predecessor, U.S. Filter/JWI, Inc. ("USF/JWI"). His strategy was to confuse customers into thinking Watermark (then named J-Parts, L.L.C.) was associated with USF/JWI. He sold aftermarket parts for USF/JWI equipment, particularly USF/JWI's trademarked brands of equipment incorporating the "J-" prefix such as J-PRESS® and J-MATE®. Even today, Watermark agrees that the "J-" prefix "has a strong association with the JWI brand." [*Final Pretrial Order*, RE 221 PgID.8186 ¶ 2.10].

Mr. Gethin admitted that he incorporated J-Parts in April 2003, while he was still employed by USF/JWI. [*Complaint in the 2003 Litig.*, RE 1-1 PgID.57-58 ¶¶ 57, 59]; [*Answer in the 2003 Litig.*, RE 1-3 PgID.331 ¶¶ 57, 59]. Mr. Gethin admitted that before he left USF/JWI, he downloaded documents from USF/JWI's internal computer system, which based on USF/JWI's investigation comprised confidential lists of all the J-PRESS filter presses and J-MATE sludge dryers that had been sold by USF/JWI at that point, customer contact information, copies of proposals made to USF/JWI customers for spare parts sales, templates used by USF/JWI for communications with customers, and detailed spare parts price lists.

[*Complaint in the 2003 Litig.*, RE 1-1 PgID.57-58 ¶¶ 58]. Mr. Gethin admitted that he took documents from USF/JWI, but allegedly could not recall what he downloaded from USF/JWI to start his business. [*Answer in the 2003 Litig*., RE 1-3 PgID.331 ¶ 58].

After Mr. Gethin started J-Parts, several USF/JWI customers reached out to USF/JWI to inquire whether J-Parts was affiliated with USF/JWI. [*Complaint in the 2003 Litig.*, RE 1-1 PgID.59-60 ¶¶ 66-68]. Some of those customers shared emails allegedly sent to them by Mr. Gethin telling them to "update your records and add ***J-PARTS, LLC*** as your preferred supplier of spare parts." [*Id.* PgID.84]. Nothing in the emails made any attempt to distinguish J-Parts from USF/JWI or inform customers that J-Parts was a competitor to USF/JWI. [*Id.*].

Despite Mr. Gethin's largely undisputed actions, Watermark now insists that it had no desire to infringe USF/JWI's trademarks, and only agreed to be enjoined from future infringement "in the spirit of cooperation." *Watermark's Br.* at 6. But Mr. Gethin knew what he was doing when he took documents from his employer, incorporated a company using the "J-" prefix, and told USF/JWI customers to "update their records" to buy spare parts from him while conspicuously avoiding any language that would distinguish JWI from J-Parts. Mr. Gethin agreed to a permanent injunction because he got caught.

## III. WATERMARK CONTINUED A PATTERN OF TRADEMARK INFRINGEMENT

In 2015, Evoqua learned that Watermark had returned to its old ways to market its sludge dryer to Evoqua's customers, based on trademark infringement and a design copied from Evoqua. Watermark told Evoqua's customers that it was introducing a "replacement" to the J-MATE® sludge dryer, or a "new version," of the J-MATE®, without telling customers that it was not affiliated with the company that makes the J-MATE®. [*J-Mate® v. DryMate Blog Post*, RE 246-5 PgID.9162]; [*Trial Tr. Vol. II*, RE 256 PgID.9613 at 27:13-25].

Watermark named its sludge dryer the "DryMate" because it was intended to be a replacement for Evoqua's J-MATE®. [*Trial Tr. Vol. II*, RE 256 PgID.9597-98 at 11:11 – 12:13]. Watermark never ran a trademark search or sought the opinion of a trademark attorney regarding whether the name DryMate was likely to infringe Evoqua's J-MATE® mark. [*Id.* PgID.9598 at 12:14-25]. It adopted the name over the objection of at least one employee involved in the naming process, who believed the DryMate was "too close" to Evoqua's J-MATE®. [*Id.* PgID.9651 at 65:12 – 22]. Watermark even bucked its own naming conventions, which relied on the suffix "-mark" to associate its products with Watermark, in favor of the "-mate" suffix that Watermark knew was used only on the J-MATE®. [*Malik Depo. Tr.* Sealed RE 40-4 at 88:24-89:21]; [*Trial Tr. Vol. II*, RE 256 PgID.9593 at 7:2-17].

Watermark continued to connect the DryMate and the J-MATE® in its marketing. It produced a blog post on its website titled "J-Mate® Versus DryMateTM Continuous Sludge Dryer: A Side By Side Comparison." [*J-Mate® v. DryMate Blog Post*, RE 246-5 PgID.9162-70]. It characterized the DryMate as a replacement of, and improvement over, the J-MATE®, and used the term "J-Mate®" sixteen times within the blog post without ever indicating that the J-MATE® was manufactured by a competitor. [*Id.*].

Watermark's own employees voiced concerns about the company's extensive use of the J-MATE® mark in that blog post. Watermark employee Andrew Hagen questioned whether it was a good idea to include Evoqua's J-MATE® mark so extensively. [*Eml. fr. J. Johnson to A. Hagen*, RE 246-8 PgID.9210-13]. Jeremy Johnson, the blog post's author, dismissed those concerns, stating that "if anything else, it will help drive search traffic to our blog and website, as the article is loaded with relevant keywords. ☺" [*Id.* PgID.9211]. He added that in addition to using the term J-MATE® throughout the blog post to advertise Watermark's competing DryMate product, Watermark had "an SEO [Search Engine Optimization] strategy/campaign around 'J-Mate' and related keywords." [*Id.* PgID.9210].

Due to declining demand, Evoqua downgraded its J-MATE® capital equipment offering from being a standard product to a customized solution quoted

on a customer-by-customer basis. [*Trial Tr. Vol. I*, RE 255 PgID.9495-97 at 66:10 - 68:7]; [*Trial Tr. Vol. II*, RE 256 PgID.9764 at 178:4-12]. Watermark concedes it took this opportunity to introduce its infringing sludge dryer. *Watermark's Br.* at 8-9. But Watermark knew that J-MATE® was a registered trademark, which did not become fair game to competitors based solely on rumors of a "vacuum" in the industry. [*Trial Tr. Vol. II*, PgID.9605-06 at 19:25-20:2]; 15 U.S.C. § 1057. Watermark knew what it was doing when it adopted the infringing DryMate name and used the J-MATE® mark in an infringing manner. *See Watermark's Br.* at 8-9. Watermark could not have believed it was free to infringe the J-MATE® mark. Watermark simply did not think it would get caught again.

## IV. WATERMARK'S THEFT AND COPYING OF EVOQUA'S DOCUMENTS FOR ITS OWN USE

When the Complaint was filed, Evoqua was aware of a few examples of Watermark's theft of Evoqua documents and copyright infringement. Watermark resisted disclosing all instances of its infringement until late in discovery. When Watermark finally provided relevant discovery, the full scope of the infringement became apparent.

When Evoqua filed its Complaint in January 2016, Evoqua was aware that Watermark had taken proprietary slides from an internal training presentation created by Evoqua's immediate predecessor, Siemens, and had publicly distributed it in its own marketing emails to advertise products that competed directly with

Evoqua's. [*Complaint*, RE 1 PgID.23 ¶¶ 95-96]. Watermark copied images from a brochure created by Evoqua's predecessor, JWI, digitally removed the JWI branding, and replaced it with the Watermark logo. [*Id.* PgID.24 ¶ 98]. Watermark also copied confidential technical drawings created by JWI, and inserted them into its own product manuals, removing the JWI logos and replacing them with Watermark's own branding. [*Id.* PgID.24-29 ¶¶ 99-102].

Evoqua learned through discovery that the scope of Watermark's misuse of Evoqua's information and data was far more widespread than initially believed. Watermark's president, Mr. Gethin, testified that Watermark maintained a "whole library" of Operations and Maintenance ("O&M") manuals for brands of equipment owned by Evoqua. Watermark made copies and sold these manuals to its own customers, without permission from Evoqua. [*Gethin Depo. Tr.*, Sealed RE 40-2 at 162:14-166:19]. Mr. Gethin also testified that Watermark modified Evoqua's manuals and gave them away to customers. [*Id.* at 166:4-23]. Watermark replaced the cover page to appear as though the manual originated with Watermark, and replaced the contact information for aftermarket parts and supply inquiries from an Evoqua contact number to Watermark's own. [*See id.*].

Although all the O&M manuals include an express statement indicating that the manuals contain proprietary information (which mirrored statements Watermark put in its own manuals), Watermark failed to produce the majority of

the O&M manuals in response to Evoqua's requests for the production of all Evoqua proprietary information in its possession. [*See Watermark's Resp. to Evoqua's First Requests for Production,* RE 267-2 PgID.10235].

Watermark never disputed that it used the documents at issue. [*Opinion*, RE 274 PgID.10305]. And Watermark even acknowledged that the Evoqua documents found in its possession "should not have been there." [*Watermark's Supp'l Br. in Opp. to Evoqua's Mot. for Sanctions*, RE 36 PgID.957-58].

Evoqua amended its Complaint on October 4, 2016, based on the information discovered, and identified additional copyright registrations it obtained related to works found in the possession of Watermark. [*See Amended Complaint*, RE 55 PgID.5014-5022 ¶¶ 138-154]. Evoqua's Amended Complaint alleged that Watermark had infringed and was continuing to infringe Evoqua's copyrighted works "including . . . Evoqua's manuals, including the 1200MM and 630 MM J-Press Manuals." [*Id.* PgID.5030 ¶ 200]. Watermark had not yet produced or identified the majority of the O&M manuals from the "whole library" of manuals it allegedly maintained.

Evoqua was required to serve additional discovery requests on Watermark specifically seeking the identity of each and every O&M manual in Watermark's possession, despite the fact that such manuals should have been produced in response to previous discovery requests. [*See Watermark's Responses to Evoqua's*

*2d Interrogatories,* RE 211-1 PgID.8131]. On March 6, 2017, Watermark for the first time identified more than thirty Evoqua-brand O&M manuals in its possession, and ultimately produced copies of those manuals. [*Id.*].

When Evoqua served its expert report on damages on July 21, 2017, it identified all the manuals produced by Watermark as infringing Evoqua's copyrights, and relied on those manuals in support for Evoqua's claim for copyright damages. [*See Expert Report of Eric Carnick,* Sealed RE 198 at Ex. 6.0 – 9.3]. Defendants never objected to Mr. Carnick's reliance on the March 2017 O&M manuals as a basis for his computation of damages.

On August 18, 2017, Evoqua filed five additional copyright registration applications with the Copyright Office covering the O&M manuals discovered within Watermark's possession. [*See Registration Certificates* RE 162-3 – 162-7]. Evoqua's applications were approved on September 27, 2017. [*Id.*]. Evoqua served a supplemental production of documents comprising the registration certificates and correspondence with the copyright office on October 10, 2017. [*Email to Counsel*, RE 211-2].

Watermark served no interrogatories seeking the basis for Evoqua's copyright infringement claim with respect to O&M manuals, and deposed none of Evoqua's fact witnesses after the filing of the Amended Complaint. Watermark never served any discovery requests seeking an identification of the copyright

registrations asserted by Evoqua, or an identification of the works alleged to be infringing. [*See Evoqua's Responses to Watermark's 2d Interrogatories*, RE 169-2 PgID.7406]. Watermark only requested discovery related to the corporate succession of Evoqua on February 17, 2017, more than one year after the case was filed and after Watermark had already admitted that Evoqua was the successor-in-interest U.S. Filter/JWI, Inc. [*See Evoqua's Responses to Watermark's 2d Set of Requests for Prod.*, RE 177-1 PgID.7621]. Even after Watermark obtained Evoqua's expert report on damages, which unambiguously accused Watermark's use of O&M manuals as acts of copyright infringement, Watermark never sought further information regarding Evoqua's claim. [*See Expert Report of Eric Carnick,* at Ex. 6.0 – 9.3].

Watermark moved for summary judgment on October 23, 2017. The only argument Watermark raised with respect to Evoqua's claims for copyright infringement was that alleged defects in Evoqua's registration certificates supposedly should have caused those certificates to be invalid. [*See Evoqua's Summary Judgment Opposition*, RE 162 PgID.7221]. Watermark only challenged the jurisdictional pre-requisites to bringing a copyright claim, not Evoqua's ownership of the works at issue. [*Id.*].

At the hearing on Watermark's motion for summary judgment, the district court did not reach Watermark's argument, and instead raised an issue not

identified or briefed by either party regarding Evoqua's ownership of the copyrights-at-issue. [*Hearing Tr.*, RE 167 PageID.7348 l. 2 – PageID.7351 l. 12]; *see also Evoqua's 1st Br.* at 17-18. On March 26, 2018, fifteen days before trial, the district court granted summary judgment to Watermark on Evoqua's claims for copyright infringement. [*Opinion*, RE 217]; *see also Evoqua's 1st Br.* at 19-20.

## V. WATERMARK ADVERTISED THAT IT "FEATURE[D] OEM PARTS" FOR EVOQUA BRANDED EQUIPMENT, WHICH WATERMARK ADMITS HAD TO BE CORRECTED

In June 2015, Evoqua became aware that Watermark's website represented that "M.W. Watermark features OEM parts for" brands of filter presses owned and sold by Evoqua. [*Web Page Excerpts*, RE 1-20 PgID.424]. Evoqua believed this statement was literally false because the term "OEM" is used in the dewatering industry to indicate an affiliation with the Original Equipment Manufacturer, meaning Evoqua. [*Trial Tr. Vol. 1*, RE 255 PgID.9474-75 at 45:11 – 46:7].

Evoqua objected to any suggested affiliation between Watermark and Evoqua, as the two companies are, and have always been, direct competitors. [*Id*. PgID.9565 at 136:12-21]; [*Wilder Decl.*, RE 162-8 PgID.7286 ¶ 7]. It believed that any perceived affiliation between the two competitors with respect to the sale of aftermarket parts was damaging to Evoqua, because it could not evaluate or guarantee the quality or safety of parts sold by Watermark. [*Trial Tr. Vol. I*, PgID.9565-66 at 136:22 – 137:137]; [*Wilder Decl.*, PgID.7286 ¶ 5].

The parties agreed that the "OEM" designation was likely material to a customer's purchasing decision, and Watermark's President testified at trial that it was important to be able to market products as alleged "OEM" parts because "an OEM part, to some people it's important." [*Trial Tr. Vol. II*, RE 256 PgID.9627 at 41:1-15]. This was particularly consequential to Evoqua's business as a whole, because although aftermarket parts sales may only account for just over twenty percent of Evoqua's sales, they account for eighty percent of Evoqua's profitability. [*Trial Tr. Vol. I*, RE 255 PgID.9463 at 34:3-8].

In response to Evoqua's complaints about Watermark's use of the "OEM" label, Watermark corrected its website. *Watermark's Br.* at 66. However, Watermark ignored Evoqua's requests to perform corrective advertising or to offer an account of how much harm may have been done to Evoqua by the Watermark's marketing. [*Trial Tr. Vol. I*, PgID.9564-65 at 135:17 – 136:9]. Because it was unsatisfied with Watermark's response, Evoqua filed suit. [*Complaint*, RE 1 PgID.29-39 ¶¶ 103-106].

Watermark moved for summary judgment on Evoqua's false advertising claim, which was denied by the district court on January 11, 2018. [*Order*, RE 165]. Following the conclusion of Evoqua's case-in-chief at trial, Watermark moved for judgment as a matter of law, which was also denied by the court. [*Trial*

*Tr. Vol. II*, RE 256 PgID.6978-79 at 92:19-93:3]. Evoqua's claim was presented to the jury, which found in favor of Defendants. [*Verdict Form*, RE 239].

## SUMMARY OF THE ARGUMENT

### I. EVOQUA HAS STANDING TO ENFORCE THE PERMANENT INJUNCTION AND THE DISTRICT COURT'S DECISION SHOULD BE REVERSED

Evoqua has standing to enforce the Permanent Injunction entered in the 2003 Litigation between Watermark's predecessor, J-Parts, L.L.C, and Evoqua's predecessor, U.S. Filter/JWI, Inc. The district court's finding to the contrary should be reversed.

Watermark's response to Evoqua's appeal argues the wrong standard of review. The district court made a legal determination on standing, which is at the heart of the Constitution's case or controversy requirement, and its decision is reviewed *de novo*. *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 205 (6th Cir. 2011). Watermark relied on the abuse of discretion standard, which does not apply to legal questions of standing. *Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 533 (6th Cir. 2012). Watermark failed to present any arguments to this Court relying on the correct standard of review.

Watermark's arguments focus on the wrong issue. Watermark only argues case law regarding the rights of ***third-party beneficiaries*** with respect to consent decrees. *Watermark's Br.* at 29, 34. But as Evoqua argued on appeal, to which Watermark offers no response, Evoqua does not claim to enforce the Permanent Injunction as an alleged third-party beneficiary; it seeks to enforce the injunction

as the **real party in interest** under the Federal Rules and the traditional principles of standing. *United States v. State of Mich.*, 940 F.2d 143, 165–66 (6th Cir. 1991).

Judicial standing is not a contract right that can be negotiated amongst the parties to a consent decree, and therefore cannot be resolved solely within the four corners of a consent decree. *Id.* The parties do not get to decide amongst themselves who has the right to stand before the court as the real party in interest in litigation. That is a question of law, to be decided by traditional standing rules and principles.

Watermark's only attempt to support the district court's reliance on the Federal Circuit's *Thatcher* decision is to repeat the flawed reasoning in *Thatcher*. But *Thatcher* incorrectly applied Supreme Court law pertaining to third party beneficiaries to situations involving a real party in interest. *Thatcher* is not binding on this Court, is against the weight of Supreme Court and Sixth Circuit precedent, and its reasoning has never been adopted by any court other than the district court in this case. This Court should not extend *Thatcher's* incorrect holding in this circuit.

Even if the Permanent Injunction was interpreted solely as a contract, and not in any way as a judicial act, the district court erred by interpreting the contract to prevent enforcement of the Permanent Injunction by the successor-in-interest to U.S. Filter/JWI, Inc. Contracts must be interpreted to preserve the bargained for

position of the parties. *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992). The clear intention of the parties, evidenced by the fact that the consent decree was characterized by the parties and the court as a Permanent Injunction, was to permanently and forever enjoin Watermark from misusing the proprietary information, and infringing the trademarks, of Evoqua's predecessor.

The district court's determination that the contract was unambiguous required the court to improperly speculate about what the parties "might try to negotiate," and arrived at a position that was not proposed or urged by any party to the Permanent Injunction. [*Opinion*, RE 154 PgID.6979 n. 2]. The district court is not entitled to deal in speculation in allegedly unambiguous contracts. *See, e.g., Hutchinson v. Honeymoon Corp.*, No. 5:16CV00018, 2017 WL 6502529, at *3 (N.D. Ohio Dec. 19, 2017); *Schreiber v. State Farm Ins. Co.*, 494 F. Supp. 2d 758, 765 (S.D. Ohio 2007). The district court's finding is not in accord with the unambiguous intentions of the parties. If the district court wanted to understand what the parties "might try to negotiate," it should have held an evidentiary hearing and made findings of fact. The district court's attempts to recast a judicial order as an allegedly unambiguous private contract were an improper attempt to remove a well-pled claim from its docket because the district court did not believe that courts should be "involved in contempt." [*Hearing Tr.*, RE 147 PgID.6902 ll. 2-8].

## II. EVOQUA OWNS THE COPYRIGHTS IN SUIT AND THE DISTRICT COURT'S DETERMINATION SHOULD BE REVERSED

The district court erred by holding that the Carve-Out Asset Transfer Agreement (the "Carve-Out Agreement") by and between Siemens Industries ("SII") and Siemens Water Technologies (now Evoqua) was not effective to transfer copyrights to Evoqua. Watermark's arguments support the conclusion that the Carve-Out Agreement was incorrectly construed, contrary to a plain reading of the agreement, the basic principles of copyright law, and the clear intention of the agreement as a whole.

The Carve-Out Agreement included language that is sufficient to transfer copyrights to Evoqua. The Carve-Out Agreement transfers "***information and data . . . irrespective as to whether they are protected by copyrights or not***." [*Carve-Out Ag.*, 2003 Litig., RE 48-1 PgID.783-84 ¶ 2.2]. It is the broad agreement of courts that this language is sufficient to transfer copyrights. *Shugrue v. Cont'l Airlines, Inc.*, 977 F. Supp. 280, 285 (S.D.N.Y. 1997); *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 931 (7th Cir. 2003); *SCO Group, Inc. v. Novell, Inc.*, 578 F.3d 1201, 1213 (10th Cir. 2009).

The district court held that Evoqua received ***both*** the rights to the material objects (Evoqua's documents, files, etc.) ***and*** the rights to the underlying "information and data" embodied in those works. [*Opinion*, RE 217 PgID.8171-74] (citing [*Carve-Out Agreement*, 2003 Litig., RE 48-1 PgID.783-84, § 2.2,

PgID.780 § 1.1.4]). Nevertheless, the district court incorrectly held that this was not sufficient to transfer the copyrights to Evoqua.

The district court's interpretation is also at odds with the overall purpose of the agreement, which was to carve Evoqua out of SII as a distinct entity. That is, while the district court held that the parties intended for Evoqua to obtain all of its books, files and documents, and the information and data embodied in those books, files and documents, the court's opinion would mean that SII, *not Evoqua*, has the exclusive right to make, distribute, and modify those documents. 17 U.S.C. § 106. That construction of the agreement is not supported by the language of the agreement itself, and is inconsistent with a reasonable understanding of what it means for an entity to own its "own" information and data.

There is no plausible rationale for the purported purpose of the contract under the district court's interpretation or Watermark's arguments. The district court's determination that Evoqua did not own the copyrights-at-issue should be reversed.

## III. THE DISTRICT COURT'S REFUSAL TO AWARD ATTORNEYS' FEES WAS WITHIN ITS SOUND DISCRETION

The district court's decision not to award attorneys' fees to Watermark on Evoqua's claim for copyright infringement was an appropriate exercise of its sound discretion. The district court's decision should be affirmed.

The denial of an award of attorneys' fees is reviewed for abuse of discretion. *Jones v. Blige*, 558 F.3d 485, 494 (6th Cir. 2009). There is no precise formula that the district court need apply in making its decision, so long as it makes a particularized, case-by-case assessment. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985, 195 L. Ed. 2d 368 (2016). A district court's determination on the objective reasonableness of the non-prevailing party's position is given significant weight, because that determination is closely related to what the judge has already done by deciding the case. *Id.*

The district court properly considered whether fee shifting would be appropriate under the Sixth Circuit's permissive four-factor test, and the grounds alleged by Watermark. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n. 19 (1994). The court found that Evoqua's claim was non-frivolous, and was objectively reasonable. There is no dispute that Watermark was copying, modifying and selling or giving away works protected by copyright that Watermark did not own and did not license from anyone. [*Opinion*, RE 274 PgID.10305]. And the district court ruled against Evoqua's copyright infringement claim only after summary judgment briefing was complete, following a request for supplemental briefing on a question identified by the district court, but not raised by either party. [*Id.*].

Watermarks remaining arguments on appeal merely re-allege disputes of fact that Watermark presented to the district court, but that the court did not find to be

persuasive. The district court dismissed Watermark's contention that Evoqua had unreasonably multiplied proceedings, because Watermark itself had failed to bring motions or raise issues that would have allowed the court to consider the merits of Evoqua's copyright claim earlier. [*Id*. PgID.10305-06]. Although bad faith is generally not considered a factor in fee shifting determinations for copyright cases, *see Fogerty*, 510 U.S. at 534, n. 19, the court found that Evoqua's claims were not brought in bad faith. [*Opinion*, RE 274 PgID.10305-06].

The court also found that an award of fees would not be justified under the principles of compensation or deterrence. [*Id.* PgID.10306]. An accused infringer who did not dispute it was using copyrighted works it did not own and did not license should not be rewarded because it prevailed on the eve of trial due to an alleged gap in the chain of title to the copyrights, particularly one that has been challenged on appeal here.

## IV. THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN REFUSING TO AWARD FEES UNDER THE LANHAM ACT

The district court also acted within its discretion by declining to award fees to Watermark under the Lanham Act on Evoqua's claim for false advertising.

The Lanham Act presents a high bar to fee shifting and awards fees only in "exceptional" cases. *Taylor v. Thomas*, 624 F. App'x 322, 328 (6th Cir. 2015). A district court has a great deal of discretion in deciding not to find a case

exceptional, or award fees. *LidoChem, Inc. v. Stoller Enterprises, Inc.*, No. 1:09-CV-204, 2016 WL 9281944, at *2 (W.D. Mich. Jan. 5, 2016).

The district court determined that both parties' positions on Evoqua's false advertising claim were plausible, and thus, the case was not exceptional. [*Opinion*, RE 274 PgID.10306-08]. The district court did not grant summary judgment or judgment as a matter of law to Watermark on Evoqua's claim; the question was decided by the jury. [*Id.*]. Where claims are strong enough to reach trial, it is a good indication that the case is not exceptional. *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010).

On appeal, Watermark merely reasserts arguments presenting factual disputes that were previously before the district court, and which the court did not find to be persuasive. In fact, Watermark fails to meaningfully address the district court's findings on these arguments or even attempt to rebut them. Where an appeal fails to identify any palpable defect in the district court's reasoning, and merely continues to press the same arguments on appeal in the same way hoping for a different result, the district court's decision should be affirmed.

## ARGUMENTS IN REPLY

### I. THE DISTRICT COURT'S DETERMINATION THAT EVOQUA LACKED STANDING TO ENFORCE THE PERMANENT INJUNCTION SHOULD BE REVERSED

#### A. Watermark Argues for an Incorrect Standard of Review

Evoqua's appeal, and the district court's order below, addressed questions of law regarding Evoqua's standing to enforce a permanent injunction entered in the name of its predecessor-in-interest. These questions are reviewed *de novo* by this Court. Watermark errs by arguing that Evoqua's appeal should be reviewed as an abuse of discretion.

"When the district court reaches conclusions of law regarding standing, we review the district court's decision de novo." *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 205 (6th Cir. 2011). This standard has been echoed by cases cited by Watermark, which held that this Court "reviews a district court's interpretation of a consent decree *de novo*." *Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 528 (6th Cir. 2012).

By its terms, the district court's order vacating the finding of contempt against Watermark was based on a determination of standing. [*Opinion*, RE 154 PgiD.6979]. The district court erroneously concluded that Evoqua lacked standing to enforce a permanent injunction entered in the name of its predecessor, U.S. Filter/JWI, Inc. [*Id.*].

This Order was further based on the legal determination that the Permanent Injunction must be expressly "assignable" in order to be enforceable by the successor-in-interest to that injunction. [*Id.* PgID.6975-76]. Indeed, the district court's order requesting supplemental briefing on this point asked the parties to address the applicability of a specific decision of the Federal Circuit. [*Order*, RE 146 PgID.6895 n. 1]. Where a district court frames its determination as a standing determination, that turned on specific case law on which the court requested supplemental briefing, it should be reviewed *de novo* as a determination of law.

The case law Watermark relies upon in support of the abuse of discretion standard is inapposite. The decision to enforce a consent decree, to enjoin particular conduct, or to sanction a party for non-compliance is part of a court's "broad equitable powers" and is therefore reviewed for an abuse of discretion. *Shy*, 701 F.3d at 533. However, a judge's legal determinations concerning a consent decree are still reviewed *de novo*. *Huguley v. Gen. Motors Corp.*, 999 F.2d 142, 145 (6th Cir. 1993) (a "judge's legal determination that the consent decree had *res judicata* effect over [a party's] claim" is reviewed *de novo*); *E. Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 464 (6th Cir. 2011) (a challenge to a district court's subject matter jurisdiction over a consent decree is reviewed *de novo*).

The district court did not purport to rely on its equitable powers in vacating the court's previous finding of contempt against Watermark in the same litigation. [*See Opinion*, RE 154]. This Court recognized that the district court was making a legal determination regarding Evoqua's standing. *U.S. Filter/JWI, Inc. v. J-Parts, L.L.C.*, 733 F. App'x 804, 807 (6th Cir. 2018). Legal determinations, including those based on standing, are subject to *de novo* review. *Smith*, 641 F.3d at 205. Thus, this Court reviews the district court's finding that Evoqua lacked standing to enforce the Permanent Injunction *de novo*.

### B. Evoqua Did Not Waive Any Argument It Raises on Appeal

This Court has jurisdiction over a final order of the district court, including all non-final orders of the court that merge into the final order. Evoqua has properly appealed from the final judgment of the district court. [*Notice of Appeal*, RE 279]. Thus, Evoqua's appeal is properly before this Court on all grounds, and Watermark's arguments to the contrary are improper. *See Watermark's Br.* at 35.

The non-final orders of a district court remain part of the case while it is pending and merge with the final judgment, from which an appeal can then be taken. *Prudential Sec., Inc. v. Yingling*, 226 F.3d 668, 671 (6th Cir. 2000) (citing *Wright & Miller*, 16 Fed. Prac. & Proc. § 3921 (2d ed. 1996)). "An appeal from a judgment normally includes all prior nonfinal orders and rulings." *Id.*

Evoqua's Notice of Appeal expressly stated that Evoqua was appealing from "the final judgment of the [district court], and any opinions and orders that merge into the judgment from which the appeal is taken . . . ." [*Notice of Appeal*, RE 279]. Thus, all of the district court's orders are properly before this Court, and Evoqua has not waived any right to appeal those Orders. *Prudential*, 226 F.3d at 671.

Moreover, the specific arguments that Evoqua presents on appeal were previously presented to the district court, and are therefore properly reviewed by this Court. Evoqua argued below that it is the successor-in-interest to U.S. Filter/JWI, Inc. and that the right to enforce a Permanent Injunction should be adjudicated under the Federal Rules as a court order, not as a contract right between private parties as advocated by the *Thatcher* decision relied upon by the district court. [*See Evoqua's Successor-In-Interest Memo.*, 2003 Litig., RE 48 PgID.755-770]; [*Evoqua's Supp. Successor-In-Interest Memo.*, 2003 Litig., RE 57]. These are the same arguments that Evoqua presents on appeal. *See Evoqua's 1st Br.* at 25-49. Nothing more is required for this Court to review the district court's findings and conclusions. *See Clark v. Comm'r of Soc. Sec.*, 849 F.3d 647, 651 n. 3 (6th Cir. 2016) (the issues addressed on appeal are properly before this Court if they "could be understood as raised below under the umbrella" of arguments made before that court).

Watermark errs by arguing, without any legal support, that Evoqua should have specifically appealed from the district court's Order denying Evoqua's Motion to Substitute itself as the real party-in-interest in the 2003 Litigation. *Watermark's Br.* at 17, 35, 38. However, any interlocutory appeal of the district court's Order would have been improper. 28 U.S.C. § 1292. Even if an interlocutory appeal could have been taken, a decision to forego immediate interlocutory appeal and proceed to final judgment is proper and does not affect the Court's review of the final judgment. *Prudential*, 226 F.3d at 671. Even then, under the final judgment rule, Evoqua has appealed the district court's non-final order, because it merged with the final judgment. *Id.*

Watermark's waiver arguments are conclusory, unsupported by any case law, and factually incorrect with respect to the arguments actually raised by Evoqua before the district court. Evoqua has properly appealed issues actually raised and litigated by the parties, and all of the issues it has raised are properly before this Court.

### C. Evoqua Has the Right to Enforce the Permanent Injunction Entered In the 2003 Litigation as the Real Party in Interest

The district court erred by treating standing to enforce a Permanent Injunction as a contract right that could be negotiated between private parties, rather than under traditional standing principles and the Federal Rules. Watermark applies the wrong standard of review, and chooses to ignore Evoqua's arguments

rather than attempt to rebut them. Watermark does not address or even dispute Evoqua's arguments that Evoqua would be considered the real party in interest under the Federal Rules, and Watermark does not attempt to rebut Evoqua's showing that proceedings to enforce an injunction are continuations of the original action.

This Court recognizes that consent decrees are a "strange hybrid in the law." *United States v. State of Mich.*, 62 F.3d 1418 (6th Cir. 1995). "It is both a voluntary settlement agreement which could be fully effective without judicial intervention and a final judicial order placing the power and prestige of the court behind the compromise struck by the parties." *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994) (internal quotations omitted). In its contractual aspect, which the parties are free to negotiate, the consent decree is construed to preserve the bargained for position of the parties. *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). But in its judicial aspect, as a final judicial order, the right to enforce a consent decree, like the right to enforce any permanent injunction, is dictated by traditional standing principles and the federal rules. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992) (citing *Railway Employees v. Wright*, 364 U.S. 642, 650–651 (1961)). "[T]he prospective provisions of the consent decree operate as an injunction." *Williams*, 720 F.2d at 920. As with the enforcement of any injunction, "[s]tanding to litigate equal to

that exercised by named parties/real parties in interest may be acquired or conferred ***only pursuant to Fed. R. Civ. P. 14 and 17 through 25***." *Mich.*, 940 F.2d at 165–66.

Watermark's arguments are inapposite because it argues against the enforcement of a consent decree by ***third party beneficiaries*** to the decree, which Evoqua never claimed to be and is not relevant to the issues before this Court. *Watermark's Br.* at 29 (citing *Aiken v. City of Memphis*, 37 F.3d 1155, 1168 (6th Cir. 1994)); *see also Watermark's Br.* at 34. ***Evoqua does not claim standing as a third party beneficiary***. *Evoqua's 1st Br.* at 26-31. A third-party beneficiary exists where parties to a contract "have undertaken to give or do something directly to or for" a third party. *Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-CV-00149, 2012 WL 6084167, at *18 (W.D. Mich. Dec. 6, 2012). Nothing in the Permanent Injunction purported to give or do something for a third party, and no party to this litigation or the district court concluded otherwise. Watermark's arguments directed to the enforcement of injunctions by third party beneficiaries are inapposite.

Watermark also errs by arguing that, even on purely legal questions of standing, this Court cannot look beyond the four-corners of the consent decree. *Watermark's Br.* at 24, 30, 36-37, 39-40. To the contrary, the standing determination must be made according to the traditional understanding of a case or

controversy. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99–100 (1979).

"A party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment." *Salazar v. Buono*, 559 U.S. 700, 712 (2010). That interest confers standing to enforce the injunction. *Id.* The Supreme Court has long held that the assignee of a legal or equitable interest in the subject matter of a litigation has standing to pursue that litigation. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 282-85 (2008). When the assignee receives the transfer of all rights, title and interest in a claim, they are asserting "*legal rights of their own*." *Id.* (emphasis in original).

Watermark attempts to distinguish clear law by arguing that too much time has passed since the Permanent Injunction was entered in the 2003 Litigation. *Watermark's Br.* at 37 (citing *Corbin v. Blankenburg*, 39 F.3d 650, 654 (6th Cir. 1994)). But there is no expiration date on Article III standing. A permanent injunction is, by its nature, permanent. The district court retains perpetual jurisdiction over a civil action for the purpose of enforcing a permanent injunction entered in that action. *See, e.g., N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) (district court retains jurisdiction to enforce its judgment unless and until it has been stayed or suspended). The mere passage of time does not change a party's standing to enforce an injunction.

Likewise, Watermark errs by arguing, without legal support, that the transfer of interest in litigation before judgement should be treated differently from a transfer of interest made before enforcement of a judgment. *Watermark's Br.* 37-38 (citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150 (6th Cir. 1992); *Lucero v. Trosch,* 121 F.3d 591 (11th Cir. 1997); *Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.,* 757 F.2d 1256 (Fed. Cir. 1985); *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350 (11th Cir. 1994)). The law is clear that there is no difference, because an enforcement proceeding is a continuation of the original litigation. *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 452 (1932).

If Watermark concedes that substitution would have been appropriate during the original pendency of the 2003 Litigation, then substitution would still be appropriate for enforcing the Permanent Injunction entered in the 2003 Litigation because the enforcement proceedings render the litigation "pending again." *Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 23 (7th Cir. 1977); *see also Rodriguez-Miranda v. Benin*, 829 F.3d 29, 41 (1st Cir. 2016).

Watermark also errs by incorrectly stating that Evoqua allegedly "ignored" the cases that the Federal Circuit relied in its *Thatcher* decision, when in fact Evoqua addressed them extensively. *Compare Watermark's Br.* at 36-37 *with Evoqua's 1st Br.* at 29-30, 43-45. The Supreme Court's *Blue* Chip and *Armour* decisions only concern whether individuals claiming rights as ***third-parties*** to a

consent decree may enforce the decree, which is not at issue in this appeal because Evoqua has only ever claimed rights as the real party in interest. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975); *United States v. Armour & Co.*, 402 U.S. 673 (1971). Watermark's arguments are non-responsive to the issues raised by Evoqua in this appeal.

Watermark's arguments contain little substance beyond repeating the flawed reasoning in the Federal Circuit's *Thatcher* decision. But *Thatcher* incorrectly applied Supreme Court law pertaining to alleged third party beneficiaries to situations involving a real party in interest. *Thatcher* is not binding on this Court, is against the weight of Supreme Court and Sixth Circuit precedent, and its reasoning has never been adopted by any court other than the district court in the case below. This Court should not extend *Thatcher's* incorrect holding in this circuit.

The district court's Order vacating the finding of contempt against Watermark and dismissing Count I of Evoqua's Amended Complaint should be reversed, and this Court should hold that Evoqua is the real party in interest to the 2003 Litigation, capable of enforcing the permanent injunction entered in favor of its predecessor, U.S. Filter/JWI, Inc.

### D. If Article III Standing Is Construed as A Contract Right, Evoqua Has the Right to Enforce the Permanent Injunction

If standing to enforce the Permanent Injunction is interpreted under Michigan contract law, then "[t]he primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127 n. 28 (1994). Even where a Permanent Injunction is construed within the four corners of the injunction, it "should be construed to preserve the position for which the parties bargained." *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992).

The district court's determination as to the alleged intention of the parties was based on its own speculation without any factual support. [*Opinion*, RE 154 PgID.6979 n. 2]. But the district court is not entitled to deal in speculation. *See, e.g., Hutchinson v. Honeymoon Corp.*, No. 5:16CV00018, 2017 WL 6502529, at *3 (N.D. Ohio Dec. 19, 2017). Where the district court bases its interpretation of an allegedly unambiguous contract on what the parties "might" or "would likely" have intended, it has erred as a matter of law. *Schreiber v. State Farm Ins. Co.*, 494 F. Supp. 2d 758, 765 (S.D. Ohio 2007).

Watermark does not dispute that the district court's decision was at odds with the position that the parties bargained for. That is especially clear where, as here, the Permanent Injunction agreed upon by the parties concerns trademark rights. [*See Permanent Injunction*, RE 1-7]. Trademarks are valuable assets that

only retain their value to the extent that the licensor or assignor maintains adequate control over the nature and quality of the goods and services under the mark. 1 McCarthy on Trademarks and Unfair Competition § 2:10 (5th ed.). Thus, it makes little sense for a trademark owner to agree to an injunction against trademark infringement that only operates until, but not following, a change in corporate form or an assignment of the trademark rights at issue in the litigation. *See id.* Even in its response, Watermark does not claim that the district court's speculation reflected its intentions. *See Watermark's Br.* at 38-40.

At a minimum, where a contract is ambiguous, or it becomes necessary to consider the parties' intent, then "construction is permitted." *Rasheed*, 445 Mich. at 127 (citing *Berk v. Gordon Johnson Co.*, 232 F. Supp. 682, 687 (E.D. Mich. 1964)). Where, as here, the district court was required to assume what the concerns of the parties were, and base its decision on what the parties "might try to negotiate" to resolve their claims, the contract is ambiguous and the district court should have considered extrinsic evidence to determine the parties intentions, in order to preserve the position that the parties bargained for. [*See Opinion*, RE 154 PgID.6979].

Watermark does not dispute that the district court speculated about the parties' intentions in entering into the Permanent Injunction, and it did not and does not claim that the district court properly discerned the parties' intent. The

district court erred by construing the Permanent Injunction as an unambiguous contract.

## II. THE DISTRICT COURT'S DETERMINATION THAT EVOQUA DID NOT OWN THE COPYRIGHTS IN SUIT SHOULD BE REVERSED

The District Court erred in granting Defendants' motion for summary judgment relating to Evoqua's copyrights. Evoqua acquired the copyrights to its own documents from Siemens, as evidenced by the agreement itself and declarations from both parties to the agreement. Watermark's arguments support Evoqua's contention that the district court's interpretation of the carve-out agreement was incorrect as a matter of law.

Copyright assignments are liberally construed. They require no specific formalities and need not even mention the words "copyright," "assign" or "transfer." *Vance v. Latimer*, 648 F. Supp. 2d 914, 924 (E.D. Mich. 2009). "So long as the parties' intent is clear, a transfer of copyright need not include any particular language." *Gilleland v. Schanhals*, 55 Fed. App'x 257, 260 (6th Cir. 2003) (citing *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999)).

The Carve-Out Agreement included language that is sufficient to transfer copyrights to Evoqua. The Carve-Out Agreement transfers "***information and data . . . irrespective as to whether they are protected by copyrights or not***." [*Carve-Out Ag.*, 2003 Litig., RE 45-2 at 11-12 ¶ 2.2]. Other courts have held that an

agreement transferring intellectual property rights "regardless of whether any portion thereof is or may be validly copyrighted," is sufficient to transfer copyrights. *Shugrue v. Cont'l Airlines, Inc.*, 977 F. Supp. 280, 285 (S.D.N.Y. 1997).

Watermark's arguments in response are inapposite, and support Evoqua's argument that the district court's construction of the Carve-Out Agreement was an error of law. Watermark bases its construction of the Carve-Out Agreement on the principle that transferring rights to a "material object" does not itself convey rights to a copyrighted work. *Watermark's Br.* at 43, 45. But the section of the Carve-Out Agreement relied on by Evoqua as evidencing the transfer of copyrights concerns the transfer of "information and data," not material objects. [*Carve-Out Ag.*, 2003 Litig., RE 45-2 at 11-12 ¶ 2.2]. Watermark identifies no case law supporting any argument that an agreement to transfer intellectual property, such as information and data, does not also transfer copyrights.

Watermark's arguments also are at odds with the district court's own interpretation of the Carve-Out Agreement, which concluded that the Agreement transferred ***both*** information and data, ***as well as*** the material objects embodying that information and data – the "books, and records, files and other documents and data." [*Opinion*, RE 217 PgID.8171-74] (citing [*Carve-Out Agreement*, 2003 Litig., RE 48-1 PgID.783-84, § 2.2, PgID.780 § 1.1.4]). The district court never

attempts to reconcile how an agreement which transfers information and data, and the records, files, and other documents in which that information and data is embodied, somehow fails to transfer copyrights. And Watermark's response does not purport to resolve that ambiguity.

Watermark's own construction of the Carve-Out Agreement is also internally inconsistent. It claims that a section of the Carve-Out Agreement that does not purport to transfer intellectual property (because the transfer of IP was dealt with in other sections) "unambiguously excludes copyrights," despite the fact that the word copyright is never mentioned. *Watermark's Br.* at 45 (citing [*Carve-Out Agreement*, PgID.779]). And it argues that the section of the Agreement transferring information and data that specifically addresses copyrights somehow does not purport to transfer copyrights. *Watermark's Br.* at 46 (citing [*Carve-Out Agreement*, PgID.783-84]). The provisions of a contract are intended to be read together, giving effect to all provisions therein. *E.l. du Pont de Nemours and Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985). This Court should not give effect to an interpretation of contract language that is inconsistent.

These inconsistencies further show that the district court's construction of the Carve-Out Agreement failed to give effect to overall purpose of the Agreement. *Cont'l Warranty, Inc. v. Warner*, 108 F. Supp. 3d 256, 259 (D. Del. 2015) (citing *E.l. du Pont*, 498 A.2d at 1113). Neither the district court, nor Watermark, ever

attempt to explain why Siemens – a third party – would want to own the copyrights to all of the documents belonging to Evoqua, a company it was trying to spin-off. In other words, the district court's interpretation of the Carve-Out Agreement would mean that Siemens, *not Evoqua*, would have the exclusive right to make, distribute, and modify copies of Evoqua's product manuals, marketing materials, training presentations, and other copyrighted works. 17 U.S.C. § 106. This interpretation of the Carve-Out Agreement clearly runs counter to the overall plan of the Agreement. *Cont'l Warranty*, 108 F. Supp. 3d at 259. Indeed, Siemens, a third-party not affiliated with Evoqua and not involved in this litigation, offered a declaration confirming that Evoqua, not Siemens, owns the copyrights. [*Wallace Jr. Decl.*, RE 170-1 PgID.7472-73].

Watermark incorrectly states that the district court found that an asset purchase agreement regarding the merger of JWI into U.S. Filter did not transfer copyrights, when the district court made no such ruling. *See Watermark's Br.* at 42; [*Opinion*, RE 217 PgID.8169]. And Watermark incorrectly contends that Siemens had no copyrights, when the Copyright Act provides that a copyright vests in any work of authorship fixed in a tangible medium. *Watermark's Br.* at 47; 17 U.S.C. § 102. Any contention that Siemens Industries never, at any point, fixed a work of authorship in a tangible medium is not a credible argument, and is not supported by the district court's opinion.

The district court erred as a matter of law by construing the Carve-Out Agreement as not transferring copyrights. This error is more striking because the district court held that the agreement transferred "information and data," and the "books, and records, files and other documents" in which that information and data was embodied. Watermark's arguments in support of the district court's conclusion are factually and legally incorrect, internally inconsistent, and fail to provide any plausible rationale for the purported purpose of the contract under its interpretation. The district court's determination that Evoqua did not own the copyrights-at-issue should be reversed.

## ARGUMENT IN RESPONSE TO CROSS-APPEAL

# I. THE DISTRICT COURT'S REFUSAL TO AWARD ATTORNEYS' FEES WAS WITHIN ITS SOUND DISCRETION

## A. The Award of Attorneys' Fees Under the Copyright Act Is Reviewed for an Abuse of Discretion

The Copyright Act provides that the Court "in its discretion may allow the recovery of full costs by or against any party" and that "the Court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The award of fees to a prevailing party is permissive, not automatic. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n. 19 (1994). This discretion must be exercised in an evenhanded manner with respect to prevailing plaintiffs and prevailing defendants, and in a manner consistent with the primary purposes of the Copyright Act. *Id.*

The Sixth Circuit considers four non-exclusive factors when determining whether to award fees to the prevailing party in a copyright claim: 1) the frivolousness of the claim; 2) motivation; 3) objective unreasonableness (both in the factual and the legal components of the case); and 4) the need in particular circumstances to advance considerations of compensation and deterrence. *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 529 F. Supp. 2d 800, 802 (E.D. Mich. 2007) (citing *Fogerty*, 510 U.S. at 534 n. 19).

This Court reviews the district court's denial of attorneys' fees for abuse of discretion. *Jones v. Blige*, 558 F.3d 485, 494 (6th Cir. 2009). An abuse of discretion occurs when the district court has relied on clearly erroneous findings of fact, when it improperly applies the law, or when it uses an erroneous legal standard. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Amernational Indus., Inc. v. Action–Tungsram, Inc.*, 925 F.2d 970, 975 (6th Cir. 1991). The district court's determination on objective reasonableness is given a high degree of deference, because "[a] district court that has ruled on the merits of a copyright case can easily assess whether the losing party advanced an unreasonable claim or defense." *Kirtsaeng*, 136 S. Ct. at 1987.

### B. Evoqua's Copyright Claim Was an Objectively Reasonable, Non-Frivolous Attempt to Stop Watermark from Copying and Modifying Evoqua's Manuals

The district court recognized that Evoqua's copyright infringement claims were not "frivolous or unreasonable." [*Opinion*, RE 274 PgID.10305]. It is undisputed that Watermark was using and modifying the copyrightable works at issue, which it did not own and did not license from anyone. [*Id.*]. The district court dismissed Evoqua's claim for copyright infringement based on an argument first raised by the Court, not Watermark, and which Evoqua has appealed to this

Court. Thus, the district court was within its discretion to find that Evoqua's claim was objectively reasonable, and that finding should not be disturbed.

"[I]t generally does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 628 (6th Cir. 2004). The objective reasonableness inquiry asks whether the losing party "made serious arguments in defense of his conduct." *Kirtsaeng*, 136 S. Ct. at 1988 (2016). Because the district court has ruled on the copyright claims at issue, that court is in the best position to "easily assess whether the losing party advanced an unreasonable claim or defense." *Id.* at 1987.

The Court acknowledged that "Watermark has never denied using any of the works at issue." [*Opinion*, RE 274 PgID.10305]. And the Court further held that Evoqua was asserting works that were protected by copyright. [*Id.*].

Watermark repeatedly took actions with respect to material it knew it did not own and did not license, in ways that would infringe the exclusive rights of a copyright owner. Watermark copied and distributed a "whole library" of O&M manuals for U.S. Filter, JWI and Siemens equipment, used these manuals as the basis for creating its own product manuals, and reskinned manuals with Watermark cover pages and contact information to make them appear as though they originated from Watermark, when they did not. [*Amended Complaint*, RE 55

PgID.27-28 ¶¶ 121-37]. Watermark created a training presentation that included a diagram copied or derived from copyrighted training presentations originally created on behalf of Evoqua's predecessor, Siemens. [*Id.* PgID.28-29 ¶¶ 138-39]. Watermark also created and distributed a brochure containing an image of a filter press that was derived from an image created by Evoqua's predecessor. [*Id.* PgID.29-30 ¶¶ 140-42]. Watermark also distributed product manuals containing copies of Evoqua's technical drawings. [*Id.* PgID.30-35 ¶¶ 143-45].

Under these circumstances, the district court's determination that Evoqua's claim for copyright infringement was objectively reasonable was within the court's sound discretion. There is no dispute that Watermark was copying, modifying and selling or giving away works protected by copyright that Watermark did not own and did not license from anyone. [*Opinion*, RE 274 PgID.10305]. The Court held that Evoqua owns the information and data in these works. [*Opinion*, RE 217 PgID.8171-72]. Evoqua owned the physical copies of the works. [*Id*. PgID.8172]. The district court merely held Evoqua did not own the copyrights. [*Id.* PgID.8171]. And, as the district court acknowledged, it made this determination on ownership on the eve of trial. [*Opinion*, RE 274 PgID.10305]. Thus, nothing occurred in the litigation to affect the viability or reasonableness of Evoqua's claim as the case progressed. *Jones v. Blige*, 558 F.3d 485, 494–95 (6th Cir. 2009).

Evoqua had a good faith basis for registering its copyrights in its own name. The district court drew a distinction between the statutory mergers of Evoqua's predecessors, which it viewed as a continuation of the business, and the carve-out of Evoqua from Siemens Industries, which it viewed as a new entity despite the fact that Evoqua continued to operate in the same location in Holland, Michigan, with the same employees, selling the same goods and services as its predecessors. [*See Hearing Tr.*, RE 147 PgID.6901].

Both Evoqua and the Copyright Office viewed the carve-out from Siemens as a continuation of the business of Evoqua's predecessors-in-interest. [*See Summary Judgment Opposition*, RE 162 PgID.7220]. The Copyright Office inquired about the corporate succession from JWI to Evoqua and found Evoqua's explanation of the corporate succession sufficient to justify registering the works-at-issue in Evoqua's name. [*See id.*]; [*see also Copyright Office Correspondence*, RE 162-3, 162-4, 162-5, 162-6, 162-7].

Evoqua's interpretation of the Carve-Out Agreement was reasonable, especially in light of the fact that its interpretation was shared by all parties to that agreement. [*See id.*]. As the district court noted, but did not consider in its opinion, both parties to the Carve-Out Agreement, including an entity not affiliated with Evoqua and not a party to this litigation, filed declarations attesting that they believed the Carve-Out Agreement was effective to transfer the copyrights from

Siemens Industries to Evoqua. [*Opinion*, RE 217 PgID.8174-75]; [*Wallace Jr. Decl.* RE 170-1]; [*Ganzi Decl.* RE 170-2]. Evoqua had a good faith basis for relying on the Carve-Out agreement.

Watermark's arguments on appeal reassert its own arguments on summary judgment, which the district court did not adopt, and which are contrary to the evidence. Watermark argued that alleged flaws in Evoqua's copyright registration certificates would have caused the Copyright Office to refuse registration. [*Summary Judgment Memorandum*, RE 159 PgID.7043]. Specifically, Watermark argued that Evoqua should not have been named in the registration certificates as the author under the work-made-for-hire doctrine because the copyrights sought to be registered had been created by Evoqua's predecessors, such as JWI, U.S. Filter, and Siemens. [*Id*. PgID.7041-42].

Watermark could not have prevailed on its subject matter jurisdiction argument even under the facts it alleged. First, Watermark's argument attacking the copyright registrations as a "jurisdictional prerequisite" relied on a long-abrogated reading of the law. [*Summary Judgment Memorandum*, RE 159 PgID.7043]. The registration requirement in the copyright act is a claim-processing rule, not a jurisdictional requirement, and does not restrict the district court's jurisdiction. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010). Second, inaccuracies or omissions in a copyright registration certificate will not

invalidate the certificate unless they were made with intent to defraud the Copyright Office. *Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc.*, 55 F.Supp.2d 1113, 1117-18 (D. Nev. 1999); *see also Arther Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1532 (11th Cir. 1994) (inaccurate identification of work as a work-for-hire by entity who was nonetheless the valid assignee of the copyright was not a barrier to infringement suit). "[A]n innocent misstatement, or a clerical error, in the affidavit and certificate of registration, unaccompanied by fraud or intent to extend the statutory period of copyright protection, does not invalidate the copyright, nor is it thereby rendered incapable of supporting an infringement action." *Advisers, Inc. v. Wiesen–Hart, Inc.*, 238 F.2d 706, 708 (6th Cir. 1956).

Evoqua never sought to conceal its basis for registering the works-at-issue as works made for hire under its own name, and the copyright office agreed with Evoqua's reasoning. [*See Copyright Office Correspondence*, RE 162-3, 162-4, 162-5, 162-6, 162-7]. Watermark cannot show that the Copyright Office would have refused registration had it known that Evoqua claimed ownership of the copyrights as successor-in-interest when the Copyright Office was aware of that fact and allowed Evoqua's registrations to issue.

There is no dispute that Watermark was using copyrighted works that it didn't own and didn't license. [*Opinion*, RE 274 PgID.10305]. Evoqua brought its

copyright claim in an attempt to stop Watermark's use of documents that Evoqua owned, and that Watermark did not dispute Evoqua's copyright ownership until prompted to do so by the district court. [*See id*. PgID.10305-06]. The district court was within its discretion to find that Evoqua's claim was reasonable.

### C. Watermark Has Failed to Overcome the District Court's Finding that Evoqua Did Not Multiply Proceedings

Watermark has failed to cite any evidence supporting any claim that Evoqua multiplied proceedings. The district court determined that any delays in resolving Evoqua's copyright claim were Watermark's own fault. [*Opinion*, RE 274 PgID.10305-06]. Watermark has failed to show that the district court abused its discretion in determining that Watermark was not entitled to recover its fees.

There is a high bar for finding that a party or its attorney has unreasonably multiplied proceedings. "There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001) (*quoting In re Ruben,* 825 F.2d 977, 984 (6th Cir. 1987)). The court will not find an unnecessary multiplication of proceedings where the opposing party could have avoided further expense by simply bringing a relevant motion. *See id.*

The district court found that Evoqua's copyright claim had not unnecessarily multiplied these proceedings. The district court noted that while Watermark complained about Evoqua's interrogatory responses, Watermark never brought a discovery motion to obtain a more detailed response. [*Opinion*, RE 274 PgID.10305-06]. The consequences to Watermark for failure to seek the relevant discovery were on Watermark. [*See id.*].

In fact, Watermark never took discovery to determine the copyright registrations that Evoqua was asserting, or the works that Evoqua alleged to infringe its copyrights. [*See Plaintiff's Responses to Defendant's 2d Interrogatories*, RE 169-2 PgID.7406]; [*Plaintiff's Responses to Defendant's 2d Set of Requests for Prod.*, RE 177-1 PgID.7621]. Watermark deposed no Evoqua witnesses after the filing of Evoqua's Amended Complaint. Yet Watermark knew that Evoqua believed its library of O&M manuals infringed Evoqua's copyrights at least as early as the filing of Evoqua's Amended Complaint. [*Amended Complaint*, RE 55 PgID. PgID.5014-5022 ¶¶ 138-154]. And Watermark knew which manuals were at issue no later than Evoqua's expert report on damages. [*Expert Report of Eric Carnick,* Sealed RE 198 at Ex. 6.0 – 9.3]. Watermark's arguments that it learned of Evoqua's claims on the eve of trial is not supported by fact. *See Watermark's Br.* at 56-57.

Watermark's arguments are also not supported by its own actions. The district court acknowledged that Watermark failed to fully investigate its defenses, and failed to even raise the question of Evoqua's ownership of the copyrights in the works-at-issue until prompted to do so by the district court. [*Opinion*, RE 274 PgID.10305-06]. Watermark should not be entitled to recover its fees for feigning surprise at claims Watermark did not investigate.

### D. Watermark Has Failed to Overcome the District Court's Finding that Evoqua Had A Good Faith Motivation for Bringing Suit

The district court correctly found that Evoqua's copyright claims were a good faith attempt to stop Watermark from using documents obtained from former Siemens/Evoqua employees, or from copying, and modifying manuals to Evoqua equipment, which Watermark sold or gave away to its own customers. Watermark has not shown that the district court's finding was an abuse of discretion.

The Court does not ordinarily consider allegations of bad faith in connection with an award of attorneys' fees under the Copyright Act. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n. 19 (1994). Where bad faith is alleged, the award of a sanction is subject to a "high threshold." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015). "It encompasses more than mere negligence or even recklessness." *Cakebread v. Berkeley Millwork & Furniture Co.*, 218 F. Supp. 3d 1040, 1046 (N.D. Cal. 2016).

The district court determined that Evoqua's motivation in filing its copyright claim was to stop Watermark's use of "many materials [Watermark obtained] from former Siemens/Evoqua employees," as well as "a trove of manuals for Evoqua products that Watermark copied, rebranded and sold to its own customers." [*Opinion*, RE 274 PgID.10306]. The district court understood that it was reasonable for Evoqua to view this as a concern, and to "seek recompense for Watermark's actions." [*Id.*]. Evoqua had a good faith motivation for filing suit.

On appeal, Watermark continues to press an argument that the district court did not find to be persuasive, based on a mischaracterization of Evoqua's documents. Watermark cited evidence showing Evoqua listed the federal litigation against Watermark as one of its initiatives. [*Trial Ex. KK*, RE 285-1, PgID.10376). Unrebutted trial testimony explained that because litigation is expensive, Evoqua was required to explain and get approval for its litigation costs. [*Trial Tr. Vol. I.*, PgID.9545 116:11-21]. While Watermark makes much of a statement appearing once in an email discussing how to "take out" Watermark, the email itself explains that Evoqua intended to do so by pricing itself as low as necessary to win bids in fair competition. [*Trial Ex. LL*, RE 285-2 PgID.10384].

Watermark's competitive strategy involved using and reproducing copyrightable works it knew it did not own, [*Opinion*, RE 274 PgID. 10305], and infringing a registered trademark Watermark was previously enjoined from using.

[*Verdict Form*, RE 239]. Evoqua's competitive strategy involved underbidding its competitor. [*Trial Ex. LL*, RE 285-2 PgID.10384]. Watermark's accusations of bad faith fall flat.

The district court acknowledged that there are legitimate competitive reasons for Evoqua to enforce its legal rights against a competitor, especially where Evoqua has legitimate "not unreasonable" concerns about that competitor's use of Evoqua's documents. [*Opinion*, RE 274 PgID.10306]. Watermark failed to show anything more than the fact that Evoqua had clear concerns about a competitor.

Watermark's arguments were not persuasive when considered by the trial court, and Watermark has identified no error of law in the district court's analysis. The district court's finding that Evoqua did not have a bad faith motivation for litigating its copyright claim should not be disturbed under the abuse of discretion standard.

### E. Declining to Award Fees Is Consistent with the Goals of the Copyright Act

The district court also correctly found that the final *Fogerty* factor, particular considerations of compensation and deterrence, favored declining to award fees. This is consistent with the goals of the Copyright Act to encourage litigants to stand on their rights when faced with apparent misuse of copyrighted works by others, even if they do not ultimately prevail.

The principles of compensation and deterrence are generally tied to the reasonableness of the parties' respective litigating positions. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016). The Copyright Act's fee shifting provision is intended to "encourage parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation." *Id*. "[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender & Co., Inc. v. West Pub. Co.,* 240 F.3d 116, 122 (2d Cir. 2001).

The district court reviewed the record and the parties' arguments and concluded that "there is no compelling reason to award fees for purposes of compensation or deterrence." [*Opinion*, RE 274 PgID.10306]. Watermark should not be rewarded for its practice of copying and modifying other people's documents because the district court determined, on the eve of trial, that there was a flaw in the chain ownership that was not first raised by Watermark in the litigation. [*See id.*]. Thus, the district court's determination on the final *Fogerty* factor was not an abuse of discretion and should not be disturbed.

## II. THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN REFUSING TO AWARD FEES UNDER THE LANHAM ACT

### A. A Decision Not to Award Attorneys' Fees Under the Lanham Act Is Reviewed for an Abuse of Discretion

The district court has discretion under the Lanham Act to award attorneys' fees only in "exceptional cases." *Taylor v. Thomas*, 624 F. App'x 322, 328 (6th Cir. 2015). An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*, 573 F. App'x 547, 558 (6th Cir. 2014) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

District courts have a "a great deal of discretion" in the decision not to award fees under Section 1117(a). *LidoChem, Inc. v. Stoller Enterprises, Inc.*, No. 1:09-CV-204, 2016 WL 9281944, at *2 (W.D. Mich. Jan. 5, 2016). This Court reviews a decision not to award fees for abuse of discretion. *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013).

### B. The District Court's Decision Not to Award Fees Under the Lanham Act Was Within the Court's Sound Discretion

The district court properly concluded that this was not an exceptional case with respect to Evoqua's claims for false advertising, and Watermark was not entitled to an award of attorneys' fees under the Lanham Act's fee shifting statute.

[*Opinion*, RE 274 PgID.10306 (citing 15 U.S.C. § 1117(a))]. On appeal Watermark fails to identify any palpable defect in the district court's findings or conclusions, or even meaningfully discuss the court's decision. The district court's decision was within the court's sound discretion and should not be disturbed.

Evoqua presented substantial evidence at trial that Watermark was liable for false advertising under each of the factors considered by the Sixth Circuit. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999). There was no dispute that Watermark advertised on its website that it "feature[d] OEM parts" for brands of filter press equipment sold by Evoqua. [*Final Pretrial Order*, RE 221 PgID.8187 ¶ 2.15]. Evoqua presented testimony that this statement was literally false because, in the dewatering industry, the term OEM is understood to be the manufacturer of the end product, and therefore to supply OEM parts for the end product would require an affiliation with the OEM. [*Trial Tr. Vol. 1*, RE 255 PgID.9474-75 at 45:11-46:7]. Since Watermark had no supply relationship or affiliation with Evoqua, it could not supply OEM parts. [*Id.* at 45:13-22]; [*Trial Tr. Vol. II*, RE 256 PgID.9632 at 46:13-25]. This false statement was material to potential consumers, because it related to an inherent quality or characteristic of the products and is therefore presumed to be material. *See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311-12 (1st Cir. 2002) (citing *Nat'l Basketball*

*Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997)). In addition, when customers mistakenly purchase parts they believe to be genuine OEM parts, they complain to the OEM when those parts fail. [*Trial Tr. Vol. 1*, PgID.9477 at 48:8-23]. Even Watermark believed the statement to be material, as it argued that saying it sold "OEM Parts" was preferable to simply identifying the parts themselves. [*Trial Tr. Vol. II*, PgID.9626-26 at 39:12-40:3].

The district court acknowledged that the parties disagreed about the definition of the term "OEM" as used in Watermark's advertising, and the court concluded that Evoqua's position was plausible. [*Opinion*, RE 274 PgID.10307]. Evoqua survived a motion for summary judgment, and the district court allowed Evoqua's claim to proceed to the jury. [*Id.*]. Parties are generally entitled to rely on a court's denial of summary judgment and judgment as a matter of law "as an indication that the party's claims were objectively reasonable and suitable for resolution at trial." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010). Thus, Evoqua's claims were not exceptional.

On appeal, Watermark merely restates its arguments before the district court, which were considered by the court but not found to be persuasive. The district court explained that although Watermark changed its website in response to Evoqua's concerns, "corrective actions do not immunize a defendant from possible

liability for past conduct." [*Id.*]. On appeal, Watermark merely reasserts that it corrected its website without identifying any error in the district court's conclusion. *Watermark's Br.* at 66.

Watermark even appears to concede the merits of Evoqua's claim by arguing that its website had been "corrected." *Id.* Watermark's website would not need to be "corrected" unless it was *incorrect* to begin with, thus supporting Evoqua's claim that the statement that Watermark sells "OEM" parts for brands of equipment sold by Evoqua was factually false. *See, e.g. Nellcor Puritan Bennett LLC v. Cas Med. Sys., Inc.*, 11 F. Supp. 3d 861, 882 (E.D. Mich. 2014) (The purpose of "corrective advertising" is "to counteract the effects of [] false advertising.").

The district court also found that it was reasonable for Evoqua to pursue injunctive relief even in the absence of concrete evidence of monetary damages. [*Opinion*, RE 274 PgID.10307]. This is because "monetary damages are not always easy to prove in false-advertising cases, and sometimes an injunction is the only appropriate remedy." [*Id.*]. Indeed, the Lanham act does not require a precise calculation of monetary damages to support a claim for false advertising. It only requires a showing of "harm to the plaintiff" that is causally linked to the challenged statements. *Podiatric Physicians*, 185 F.3d at 613 (6th Cir. 1999).

Evoqua's witnesses provided unrebutted testimony that Evoqua suffered harm to its goodwill and reputation as a result of Watermark's false statements. Bob Bosgraaf, a retired Evoqua employee, testified that when customers mistakenly buy parts from third-parties that they believe are genuine Evoqua parts, they seek remedies from Evoqua when those parts fail. [*Trial Tr. Vol. I*, RE 255 PgID.9477 at 48:8-19]. The failure of any parts can create significant safety issues. [*Id.*]. That was why it was important to Evoqua that customers understand when they are getting Evoqua parts, and when they are buying a competitor's parts. [*Id.*].

Watermark does not address the district court's finding and merely repeats its argument that Evoqua was not able to prove damages. *Watermark's Br.* at 66-67. Watermark cites no case law in support its argument, and fails to identify any aspect of the district court's factual analysis that it believes constitutes an abuse of discretion. *Id.* Watermark merely disagrees with the result.

Watermark also argues "bad faith," because Evoqua conducted what Watermark characterizes as a "die-hard discovery campaign," which was an argument it made verbatim before the district court but that was found to be unpersuasive. *Compare Watermarks Br.* at 68 *with* [*Motion for Fees*, RE 254 PgID.9371-72]. The only evidence Watermark cites on appeal is the same evidence it cited unsuccessfully before the district court. *Id.* And Watermark even

admitted that it refused to produce the information requested by Evoqua in discovery. [*Motion for Fees*, RE 254 PgID.9371-72]. Watermark offers no reason to disturb the district court's findings based on the same arguments and evidence cited to that court.

Moreover, Watermark fails to note that the majority of the discovery that it complains of was not specifically directed at Evoqua's Lanham Act claims, but was conducted in relation to Evoqua's Motion for Sanctions for violating the permanent injunction entered in the 2003 Litigation between Watermark and Evoqua's predecessor, U.S. Filter/JWI, Inc. [*See Case Management Order*, RE 31]. This discovery was necessary because, although Watermark repeatedly represented to Evoqua and to the Court that it did not possess any of Evoqua's proprietary information, [*see Gethin Aff.*, RE 29-1 PgID.888 ¶ 59], Evoqua learned through discovery that Watermark possessed a large amount of Evoqua's proprietary information that even Watermark acknowledged "should not have been there." [*Watermark's Supp'l Br. in Opp. to Evoqua's Mot. for Sanctions*, RE 36 PgID.957-58]. Watermark admitted that it only learned "in hindsight" that "it should have had appropriate protocols in place to prevent new Watermark employees . . . from bringing any of their prior employer's confidential information with them to Watermark." [*Id.*]. Evoqua's practices were further justified because every time it turned over a stone in discovery, Evoqua seemed to find more

documents that Watermark knew it should not have had and previously swore did not exist.

The litany of corrective actions that Watermark was forced to take supports Evoqua's argument that this litigation was necessary. Watermark was enjoined from using the same trademark it was found to have infringed, which did not stop Watermark from using that mark in a confusing manner in multiple blog posts that it only agreed to remove after it was caught. [*Permanent Injunction*, RE 1-7]; [*Gethin Aff.*, RE 29-1 PgID.897-98]. Watermark stated it did not possess any of Evoqua's internal documents, and only agreed to destroy the ones in its possession after it was caught. [*Compare Gethin Aff.*, RE 29-1 PgID.887-88 ¶¶ 57-59] *with* [*Watermark's Supp. Opposition to the Motion for Sanctions*, RE 36 PgID.957-58, 963-64]. Even on appeal, Watermark complains that its decision to make changes *after it was caught* was not only enough to escape liability, but that it should be entitled to recover its own attorneys' fees because Evoqua had the audacity to demand that Watermark compete fairly in the market without first having to be caught. *Watermark's Br.* at 69-70.

Watermark has failed to show that the district court abused its discretion in finding this case was not exceptional with respect to Evoqua's claims for false advertising. Watermark fails to even discuss the district court's findings or conclusions beyond a single mention at the end of its argument. *Watermark's Br.*

69. The district court's decision not to find this case exceptional under the Lanham Act, and to not award attorneys' fees to Watermark, should be affirmed.

## CONCLUSION

For the reasons stated above, Plaintiff-Appellant Evoqua Water Technologies LLC respectfully requests that this Court **REVERSE** the *Vacating Order* of the district court, reinstate the district court's order holding Defendants M.W. Watermark, LLC and Michael Gethin in contempt, reinstate Count I of Evoqua's First Amended Complaint, and **REVERSE** the district court's order granting summary judgment on Evoqua's copyrights. The district court's order refusing to award attorneys' fees to Watermark on either Evoqua's claims for copyright infringement, or under the Lanham Act, should be **AFFIRMED**.

Dated: May 1, 2019

Respectfully submitted,

By: */s/ Craig R. Smith*

Craig R. Smith
Eric P. Carnevale
LANDO & ANASTASI, LLP
Riverfront Office Park
One Main Street – 11th Floor
Cambridge, MA 02142
Tel: (617) 395-7000
Fax: (617) 395-7070
csmith@lalaw.com
ecarnevale@lalaw.com

***Attorneys for Plaintiff-Appellant Evoqua Water Technologies LLC***

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

The undersigned, Counsel of Record for Plaintiff-Appellant Evoqua Water Technologies LLC, hereby certifies that this ***Third Brief*** complies with the type-volume limitation provided in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. In preparing this Certificate, I relied on the word-count function of Microsoft Word. This Brief contains 12,992 words.

Dated: May 1, 2019

Respectfully submitted,

By: */s/ Craig R. Smith*

Craig R. Smith
LANDO & ANASTASI, LLP
Riverfront Office Park
One Main Street – 11th Floor
Cambridge, MA 02142
Tel: (617) 395-7000
Fax: (617) 395-7070
csmith@lalaw.com

***Attorneys for Plaintiff-Appellant***
***Evoqua Water Technologies LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2019, I caused the foregoing ***Third Brief*** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following persons:


G. Thomas Williams, III, Esq.
**MCGARRY BAIR PC**
45 Ottawa Ave. SW, Suite 700
Grand Rapids, MI 49503
Tel: (616) 742-3500
Fax: (616) 742-1010
Email: gtw@mcgarrybair.com
pleadings@mcgarrybair.com


/s/ Craig R. Smith
Craig R. Smith

**ADDENDUM**
**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

**U.S. Filter/JWI, Inc. v. J-Parts, L.L.C.,**
**No. 5:03-cv-127 (the "2003 Litigation")**

| R.E. | Description of Document | Page ID# |
|---|---|---|
| 48 | Evoqua's Memorandum Regarding the Successor-in-Interest Dispute | 742-771 |
| 48-1 | Carve-Out Asset Transfer Agreement | 772-821 |
| 57 | Evoqua's Supplemental Memorandum Regarding the Successor-in-Interest Dispute | 871-884 |

**Evoqua Water Technologies, LLC v. M.W. Watermark, LLC,**
**No. 1:16-cv-14**

| R.E. | Description of Document | Page ID# |
|---|---|---|
| 1 | Complaint | 1-43 |
| 1-1 | Complaint in the 2003 Litigation | 44-84 |
| 1-3 | Answer in the 2003 Litigation | 323-344 |
| 1-7 | Final Judgment Including Permanent Injunction | 357-368 |
| 1-20 | Excerpts from Watermark Website | 424 |
| 29-1 | Gethin Affidavit | 879-900 |
| 31 | Case Management Order | 911 |
| 36 | Watermark's Supplemental Brief in Opposition to Evoqua's Motion for Sanctions | 952-983 |
| Sealed 40-2 | Gethin Deposition Transcript | pp. 1-18 |
| Sealed 40-4 | Malik Deposition Transcript | pp.1-15 |
| 55 | Amended Complaint | 4987-5036 |

| R.E. | Description of Document | Page ID# |
|---|---|---|
| 146 | Order Requesting Supplemental Briefing | 6894-6895 |
| 147 | Hearing Transcript (June 27, 2017) | 6896-6940 |
| 154 | Opinion Regarding Evoqua’s Standing to Enforce the Permanent Injunction | 6973-6982 |
| 162 | Evoqua’s Memorandum in Opposition to Watermark’s Motion for Summary Judgment | 7194-7224 |
| 162-3 | Copyright Registration Certificate & Correspondence with Copyright Office | 7241-7249 |
| 162-4 | Copyright Registration Certificate & Correspondence with Copyright Office | 7251-7257 |
| 162-5 | Copyright Registration Certificate & Correspondence with Copyright Office | 7259-7266 |
| 162-6 | Copyright Registration Certificate & Correspondence with Copyright Office | 7268-7274 |
| 162-7 | Copyright Registration Certificate & Correspondence with Copyright Office | 7276-7284 |
| 162-8 | Wilderer Declaration | 7285-7287 |
| 165 | Order Regarding Motion for Summary Judgment | 7313 |
| 167 | Hearing Transcript (January 10, 2018) | 7315-7371 |
| 169-2 | Evoqua’s Responses & Objections to Watermark’s 2d Set of Interrogatories | 7406-7412 |
| 177-1 | Evoqua’s Responses & Objections to Watermark’s 2d Set of Requests for Production | 7621-7629 |
| Sealed 198 | Expert Report of Eric Carnick | pp. 1-106 |
| 211-1 | Watermark’s Responses & Objections to Evoqua’s Second Set of Interrogatories | 8126-8137 |

| R.E. | Description of Document | Page ID# |
|---|---|---|
| 211-2 | Email to Counsel Regarding Supplemental Production of Copyright Information | 8139 |
| 217 | Opinion Regarding Copyright Claim | 8167-8179 |
| 221 | Final Pretrial Order | 8185-8197 |
| 239 | Verdict Form | 8614-8619 |
| 246-5 | J-Mate® v. DryMate Blog Post | 9162-9170 |
| 246-8 | Eml. fr. J. Johnson to A. Hagen | 9210-9213 |
| 254 | Watermark's Motion for Attorneys' Fees | 9347-9375 |
| 255 | Trial Transcript Volume I | 9430-9586 |
| 256 | Trial Transcript Volume II | 9587-9791 |
| 274 | Opinion Regarding Post-Trial Motions | 10290-10308 |
| 279 | Notice of Appeal | 10336-10337 |
| 285-1 | Trial Ex. KK | 10356-10383 |
| 285-2 | Trial Ex. LL | 10384-10386 |